Ladies and gentlemen, please rise. This court is now in session. Please be seated. Madam Court, please call the case. Case No. 316-0531, People of the State of Illinois, Affiliate Registered Lender v. Beverly Harding, Account by Ted Hamel. Please be seated. Madam Court, Counsel, Your Honor. My name is Ted Hamel and I represent the accountant in this case. She was found guilty of driving under the influence of alcohol. The facts in this case are unique in this sense. The main witness in the case, Ms. Lobos, said in that quote, after an accident, she witnessed an accident, she eventually followed the vehicle, followed the vehicle to a stop. As she said, she got out of her vehicle to try to observe the person in what she believed to be the offender's vehicle, then got back into her vehicle and the person in the alleged offending vehicle got out. She said to her or to whoever, they should get ready, the police are coming, and drove away. And why is that important? So a person gets out of a vehicle, looks, gets back into their vehicle, person gets out of the offending vehicle, and they make a statement. Given a photo array, could not identify her. In court, could not identify my client. And with those, with seeing the person at the scene, but not being able to identify in court, not being able to identify in a photo array, to me raises obvious doubt. So that's what her testimony is, basically the only person who could actually witness the scene, witness an accident. Then you have Officer McKellen. Officer McKellen went to the scene and said that the defendant admitted to driving, but denied being in an accident and said he was sorry. Now I'm not sure what the I'm sorry means, unless it was, I wasn't in it, I'm sorry. I don't know how he's supposed to take that unless he took it as some type of admission, but it never comes out as that, it comes out as I wasn't in an accident. Then we go to the items on top of the hood of the car. One version of events from Officer McKellen in a summary suspension hearing, as he testified to as in the transcript, said that he matched these items up. On the scene, with the items on top of the hood. But at the trial, he said he didn't do it, he got confused with another case. Which again, fine, but causing this credibility for other issues as to this case. What frustrates me a lot when I see trials like this is why not ask the obvious question? Why not pull the keys out of your pocket and say, were you using these keys to drive that vehicle ten minutes before I arrived? Why not ask the obvious question? It wasn't done, I don't know why, but we don't know. Was this person driving that car ten minutes before the officer arrived? We don't know. We know that the eyewitness can't idea. Not once, but actually saw her in a photo array and then the courtroom. So with that in mind, with all the else I put in my argument to the court, I want to stress those points. She did say she was coming from a friend's house, there's no doubt. She did say she drank wine. I'm not challenging a breath test, there was a breath test on it. But were you driving that vehicle ten minutes before I arrived and were you involved in an automobile accident? A simple question that could have been asked, could have been raised. In the investigation part, I did not see it. I didn't see it in the trial part. So with that, I ask the court, do you have any questions? Those are the two big points, and those are the points I put in my brief saying, where is, there is doubt. I mean, a lot of this hangs upon an ID and a statement of saying, I'm sorry. But there is no ID and there is no admission to be in an accident. So the upshot of the officer's testimony was that there was no comparison made of the debris on the car with your client's car. Yeah, because initially at a Sunday suspension hearing, again, I was not privy to any hearings because I was not the trial attorney. But he laid out, the judge laid out the questions that were asked in the Summary Suspension Hearing, which said he made some comparison. I can't remember exactly the quote, but he didn't. He said he got confused with another case. Well, if he got confused with another case, then the causal credibility, his ability to testify in this case, in my opinion, I'm not saying he was, I'm just saying the causal credibility, how he testified in this case. Okay, but my concern is there was damage to both cars and there was no effort made to determine whether the debris belonged to the defendant's car. Correct, Judge. Correct. I wish, again, a lot of questions, a lot of things could have been done that weren't done, like I said before. Well, a grill of the defense vehicle was damaged and a portion of a damaged grill was found at the scene of the accident, right? I believe that's correct, Justice. Right, and a parked vehicle was struck in the rear and the defense vehicle had damage to the front, correct? Correct. But whether or not those two actually link up, I cannot sit here and tell the court that they actually do. I'm not saying, you know, there are no optics as to whether or not they actually were the same grill for the same car or the same thing for each car. I'm saying, yes, it appears both vehicles were in accidents, no doubt. And the debris on the defense vehicle was the same color, black, as the parked vehicle that had been struck, right? Well, again, I go to Officer McCullen. He said he did comparisons in the summary suspension hearing, but he did not. I thought he said in the transcript that he took photos, but I guess he didn't. So that causes his questions to me the ability to recall events. So I wish there was something more to it, but again, with that aside, you still have a person getting out of another motor vehicle, walking up to a second motor vehicle, looking the person in the face, I assume, getting back into hers, person gets out of their vehicle, rolls down the window, I assume, and says, you know, the police are coming, you better be prepared, but cannot adhere in a photo array and cannot adhere in court. But that evidence about the two vehicles, that's all circumstantial evidence regarding the two vehicles. Correct. Because we don't have anything conclusive as to it, yes. I agree. I mean, it's not 100 percent, but it's circumstantial evidence about the two vehicles being in the same accident. Circumstantially, I would put it circumstantially, the two vehicles were in an accident, not necessarily the same accident, but they were in an accident. But that's as far as the defense attorney will take it, Justice. I appreciate that. But with that in mind, if there was a different statement, and again, I always get frustrated in the end of a trial, an officer never asked the appointed question, were you driving that vehicle 10 minutes before I arrived, if that was the case, because we really don't know when the vehicle arrived. I mean, he never asked that question. And it's in the transcript, he said, no point in telling when she actually drank or when she actually arrived there at the scene. So that, again, adds credence to doubt. So, you know, it was Mr. Anton, the attorney, said, did you ever match the debris that was on the car on Averywood to the car in Laurel? Physically, no, I did not. Well, aren't you diluting your argument a little bit, though? It doesn't matter about the physical evidence. Let's assume for the sake of argument these two cars were involved. Isn't the strength of your argument nobody can put her behind the wheel at the time of the accident? Correct, Justice. I mean, it doesn't – I just kind of think this – whether the debris was matched to the car is a red herring. The issue is, in my brain, people's mind, did anybody put her behind the wheel? You are correct, Justice. And I agree, and there was three times that – I mean, there was once at the scene, and then a photo – I assume a short time thereafter, and then in the court. I mean, it was no, no, no. And to have that – I don't want to call it a conversation, but I want to call it that they communicated. Maybe the other person wasn't receptive, but they communicated, and she did not ID him – or her, I apologize. And that is, I agree, the strength of the argument, but I cannot look at – I never saw where somebody said they actually did something in one hearing, and the second hearing did not do it, which, again, costs credibility for his testimony as well. But to the credit of the officer, you know, he set the record straight. I agree. It's not where he denied it at first, and then went in front of the tire of facts, said, oh, I did – so I don't want to leave the impression that we're being critical of the officer. Correct. I'm just saying there could have been other mistakes that he inadvertently made, and I'm not – We could have interviewed the other people in the house and said, what time did she leave and when did she come back, and was anybody else driving? I mean, that's where he dropped the ball a little bit. So I think – I will say concur, yes. I agree with the court. So with that, if there's any other further questions. Was restitution part of the sentence? That I don't know, Justice. I do not know. I would imagine that the sentencing order was part of the appendix, but I could not tell as to that. There is a sentencing order, but I don't see anything regarding restitution. In fact, the restitution may have a separate line for restitution. It's Exhibit G of the appendix.  All right. Thank you. Thank you, Justice. I'll assume you may proceed. May it please the Court, Counsel, the standard of review is considering everything in the most favorable light of the prosecution, whether any rational trigger effect of the elements of this crime beyond a reasonable doubt. Mr. Hamill does a good job of parsing the important parts in his case, but let's look at all of the evidence. Christine Lopez was at her driveway waiting to get in her car to go to the grocery store. She saw the offending vehicle that she described as a black trailblazer go down her street and pull into one of the driveways of her neighbors and strike the Toyota, black Toyota, and she backed out and continued down the street. Now, Ms. Lopez got in her car and went and told her neighbor. The neighbor called 911. Ms. Lopez took it upon herself to follow the vehicle, and she did lose sight of the vehicle, but she believed it was the same vehicle because it was the only vehicle on the road. It looked the same, and the driver was having the same difficulty driving. She followed that vehicle to the address that Abby would drive where she confronted the driver. Then she went back to her house, and there was an Officer McClellan there who she gave a statement to and said that the offending vehicle was at the Abby would drive address. McClellan then went over to look at the SUV. He noticed that the front end was damaged and part of the grille was damaged. There were still parts of the other vehicle that was struck on the hood, and he did say that there was a grille or a part of a grille at the other address where the Toyota was. Now, the driver of the vehicle, the defendant, stated twice that she was sorry, even though she did not admit to being in the collision. There's no doubt here that she was under the influence of alcohol. Officer John Allen gave her breath test. Her breath test came back .222, which is more than twice the legal limit of .08. After she gave that breath test, she made another interesting argument or interesting statement. After filling the breath test, she apologized to the officer. She then said that she had stopped by a friend's house after work and had a few drinks. Then she stated she knew she should not have done that. That sounds like an admission of guilt to me. So combining all of the circumstantial evidence and the other eyewitness testimony, I think it's hard to say that the people failed to prove beyond reasonable doubt that the defendant was driving this vehicle under the influence of alcohol. If you don't have any questions, I will see you. Affirm the defendant's conviction. Thank you, Counselor. Counselor? Nothing further, Justice. Court will take this case under advisement. And we'll end the decision. Thank you, Your Honor. Thank you. Ladies and gentlemen, please go ahead. Court stands in recess.